MERCHANTS' NAT. BANK OF RICHMOND v. NATIONAL BANK OF LILLINGTON.

(District Court, E. D. North Carolina. February 15, 1916.)

BANKS AND BANKING ⬤⇒281—NATIONAL BANKS—LIQUIDATION.

The action of the stockholders of a national bank in voting to go into voluntary liquidation and in appointing a liquidation agent, pursuant to Rev. St. §§ 5220, 5221 (Comp. St. 1913, §§ 9806, 9808), is equivalent to the appointment of a receiver by the Comptroller in its effect on the property and the rights of the creditors. The assets of the bank become a trust fund to be administered for the benefit of all creditors pro rata, and while the bank retains its corporate existence and may be sued, the effect of a judgment obtained against it by a creditor is only to fix the amount of the debt, and the judgment plaintiff can acquire no lien which will give him an advantage over other creditors.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1075–1079; Dec. Dig. ⬤⇒281.]

In Equity. Suit by the Merchants' National Bank of Richmond against the National Bank of Lillington. On petition of John H. Boushall and R. B. Teague, receivers, for instructions.

W. H. Pace, of Raleigh, N. C., for receivers.
Clifford & Townsend, of Dunn, N. C., for judgment creditor.

CONNOR, District Judge. The facts appearing upon the record disclose this case: The stockholders of the National Bank of Lillington, on the 22d day of January, 1912, adopted a resolution, pursuant to the provisions of section 5220 of the National Banking Act, 5 Fed. Stat. Anno. 166, 167, to place the bank in liquidation, and appointing J. R. Baggott, Esq., liquidating agent, or liquidator. The resolution was duly certified to and approved by the Comptroller of the Currency. The liquidator qualified, took into his possession the assets of the bank, and proceeded to wind up its business in accordance with the provisions of the statute. Subsequent to the appointment and qualification of the liquidator, J. B. Lanier, to whom said bank was indebted, on account of a balance due him as a depositor, instituted an action against the bank in the superior court of Harnett county, securing service of the summons on the liquidator, and recovered judgment for the sum of $1,491.44, together with interest and cost, which judgment was docketed January 12, 1914, in the superior court of the county of Harnett and of the county of Lee. L. D. Burwell recovered judgment on February 2, 1914, against the bank in a justice's court for $120, which was duly docketed in said counties.

On the 20th day of February, 1914, a suit in equity was instituted in this court by the Merchants' National Bank of Richmond, in behalf of itself and all other creditors of the National Bank of Lillington, alleging that the bank was insolvent, and that its assets in the hands of the liquidator were not being properly administered, etc. A decree was passed, March 2, 1914, appointing John H. Boushall and R. B. Teague receivers, and directing the liquidator to turn over and de-

liver to them all of the moneys and property of, said bank to be administered for the benefit of the creditors. In obedience to said decree, he turned over, among other property, to the receivers, one lot situated in the town of Lillington, N. C., Harnett county, and one lot situated in the town of Sandford, in the county of Lee, belonging to said bank. Pursuant to an order made in this cause, the receivers sold said lots free from liens, for the sum of $3,250, which sum they have, or will have, when collected, in hand, subject to be disbursed in accordance with the orders of the court and the rights of the creditors. The judgment creditors claim a lien upon the said lot, by virtue of the docketing of their judgments, prior to the appointment of the receivers. For the purpose of ascertaining their duty and the rights of the judgment creditors, the receivers, upon notice to the judgment creditors, filed a petition in the cause, asking the instruction of the court in the premises. The question presented for decision is whether, by obtaining judgments and docketing them, as prescribed by the statute (Revisal, § 574), against the bank subsequent to the appointment of the liquidator and prior to the appointment of the receivers, a lien was acquired upon the real estate owned by the bank in liquidation. The National Bank of Lillington, in appointing a liquidating agent, proceeded pursuant to R. S. §§ 5220, 5221, 5 Fed. Stat. Anno. 166, 167. The statute is silent in respect to details, but it would seem that the appointment of the liquidator has the same legal effect upon the assets and the rights of creditors and stockholders as the appointment of a receiver by the Comptroller of the Currency. It is held that the bank is not dissolved, nor its corporate existence destroyed, by being put in liquidation. The liquidator may sue for the recovery of debts due, or rights belonging to, it, or may be sued upon the debts owing by the bank, for the purpose of fixing their amount. In National Bank v. Insurance Co., 104 U. S. 54, 76, 26 L. Ed. 693, it is said:

"We see nothing in the act inconsistent with the continued existence of the bank as a corporation for the purposes of liquidation. Indeed, it seems to confirm the idea that for the purpose of being sued, in order judicially to determine the question of disputed liability, it continues to exist, and the remedy against the shareholders is added as a means of execution, in case the corporate assets have, in the meantime, been otherwise applied" or otherwise appropriated.

This case is cited with approval in Chemical Bank v. Hartford Deposit Co., 161 U. S. 1, 16 Sup. Ct. 439, 40 L. Ed. 595, in which a receiver had been appointed by the Comptroller. The conditions existing here are very similar to those in the case of Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864. There, the bank had gone into voluntary liquidation and, pending the collection of the assets, a creditor filed a bill in equity, in behalf of himself and all other creditors, charging that the proceedings were not being properly conducted, asking for the appointment of a receiver, etc. The court permitted amendments to the bill by which the stockholders were brought in and a decree asked against them for unpaid subscriptions, etc. A number of exceptions were taken to the decrees of the court. Mr. Justice Mathews, in a very interesting discussion of the remedies

prescribed by the National Banking Act, and the equitable power of the court, says:

"By section 5220 it was also provided that 'any association may go into liquidation and be closed by the vote of its shareholders owning two-thirds of its stock.' "

He notes that no provision is made in the original act for enforcing the liability of individual stockholders when the bank goes into voluntary liquidation. After discussing the language of the act, he says:

"It can hardly be supposed that the omission in the statute to provide an express and specific course of proceeding, by way of judicial remedy, in case of voluntary liquidation, left the creditors of such an association in such circumstances without remedy against either a deficiency of assets or the results of a fraudulent maladministration."

He reaches the conclusion that by the statute the liquidation agent is to be likened to the receiver appointed by the Comptroller, in respect to his powers and duties, and that the suit in equity was a continuation of the process of liquidation. It is an elementary and universally recognized principle in equity jurisprudence that the assets of an insolvent corporation, or association, is a trust fund and, immediately upon the appointment of a receiver, becomes subject to the payment of its debts pro rata, preserving, however, all valid liens existing at the time the receiver is appointed, or the court has, by injunction or otherwise, assumed control of the property, and that thereafter no liens can be created, either by the corporation or the rendition of judgments. Clinchfield Fuel Co. v. Titus, 226 Fed. 574, —— C. C. A. ——. So, in George v. Wallace, 135 Fed. 286, 292, 68 C. C. A. 40, 46, Circuit Judge Hook says:

"The tangible assets of an insolvent national bank which is in the process of liquidation constitutes, in the hands of the liquidating agent, a trust fund for the primary benefit of creditors, and so of the liability of the shareholders of a bank similarly circumstanced."

The courts treat the action of the stockholders in appointing a liquidating agent, pursuant to the power conferred upon them by section 5220, as equivalent to and carrying all of the incidents in respect to the assets and the rights of creditors, as the making a voluntary deed of assignment would do. The bank ceases to be a "going concern." If it be solvent, the proceeds of the sale and collection of the assets are, under the direction of the Comptroller, applied to the payment of the debts, and the balance, if any, is distributed among the shareholders. It would be impossible to comply with the statute and effectuate its equitable purpose, if creditors were permitted to secure priorities, or liens by attachment, or recovering judgments constituting liens upon the property. 2 Morse on Banks and Banking, 1389.

Assuming that the duty of the liquidating agent and the rights of the creditors are analogous to those of a receiver appointed by the Comptroller, we find the method of proving and paying the debts of the bank prescribed by section 5236, R. S.; 5 Fed. Stat. Anno. 176 (Comp. St. 1913, § 9823). The Comptroller is required to make a ratable dividend of the money paid to him, after providing for the redemption of the notes of the bank, on all such claims as may have

been proved to his satisfaction, or adjudicated in a court of competent jurisdiction, etc. White v. Knox, 111 U. S. 785, 4 Sup. Ct.·686, 28 L. Ed. 603. The only effect of the judgment was to fix the amount of the debt. The receivers appointed in this suit take the assets and property from the liquidating agent in the same plight and subject to the rights of creditors as they were held by him. As no lien could attach by virtue of the judgment recovered by the respondent, against the real estate of the bank, while in the hands of the liquidating agent, it follows none has attached since. The receivers will distribute the funds which come into their hands upon the principle prescribed by section 5236, R. S. This will be certified to the receivers.